**FILED**
**CLERK**

**3/5/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------X

ANN FITZPATRICK,

*Plaintiff,*

-against-

MARK BORGHI,

*Defendant.*
-------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

25-cv-03600-NGG-JMW

**A P P E A R A N C E S:**

Aaron M. Goldsmith, Esq.
**The Gold Law Firm, PC**
1666 Newbridge Road, 2nd Floor
Bellmore, NY 11710
*Attorney for Plaintiff*

*No Appearance for Defendant*

**WICKS**, Magistrate Judge:

Plaintiff Ann Fitzpatrick ("Plaintiff") commenced this action on June 27, 2025 seeking to recover $93,500.00 allegedly due to her as a result of Defendant Mark Borghi's ("Defendant") breach of a consignment agreement ("Agreement"). The Agreement provided that Defendant agreed to market and sell Plaintiff's Joan Mitchell painting ("Painting") and deliver the full proceeds of such sale to Plaintiff. (*See generally* ECF No. 1.) According to Plaintiff, Defendant sold the Painting for $173,500.00 but has only remitted $80,000.00 to Plaintiff. (*See id*. at ¶ 10.)

Before the Court on referral from the Hon. Nicholas G. Garaufis is Plaintiff's unopposed Motion for Default Judgment (ECF No. 13) against Defendant seeking to recover the $93,500.00

1

still owed to her under the Agreement. For the following reasons, the undersigned respectfully recommends that the District Judge **GRANT** Plaintiff's motion (ECF No. 13) and award the damages as set forth below.

### FACTUAL BACKGROUND

The following allegations are drawn from the Complaint. (ECF No. 1.) Plaintiff is the owner of the Painting that Defendant, "an art dealer engaged in the business of buying and selling works of art," sought to sell at his then-existing art gallery in Bridgehampton, New York. (*Id.* at ¶¶ 2-5.) In 2024, Defendant allegedly "solicited from Plaintiff [] for the consignment" of the Painting and Plaintiff and Defendant "entered into a consignment agreement" through an exchange of text messages, wherein Defendant was to market and sell the Painting at an agreed price of $195,000.00. (*Id.* at ¶¶ 5, 8.)

On December 7, 2024, Defendant represented to Plaintiff that he sold the Painting for $173,500.00 as reflected in the Sale Statement that Defendant provided to Plaintiff. (*Id.* at ¶ 9; *id.* at pp. 8-9.) Defendant then proceeded to pay Plaintiff $80,000.00 for the sale of the Painting and nothing further despite multiple promises to do so. (*See id.* at ¶¶ 10, 13.) According to Plaintiff, though Defendant admitted to selling the Painting for $173,500.00, Defendant has provided no documentary proof that the Painting sold for that amount. (*See id.* at ¶ 19.) Indeed, though "Plaintiff is not aware of the exact amount for which [the Painting] was sold," Plaintiff alleges that she is "owed a minimum of" $93,500.00—the difference between $173,500 and $80,000— plus interest from December 7, 2024. (*Id.* at ¶ 12.)

Plaintiff posits that Defendant used the money he agreed to pay Plaintiff to "pay his mortgage taxes and other expenses related to his primary residence." (*Id.* at ¶ 14.) Similarly, Plaintiff alleges that Defendant represented that he would promptly repay the proceeds to

2

Plaintiff upon the sale of the Painting, despite knowing he would use part of the funds to remedy his own "precarious financial condition" instead of satisfying his full obligation to Plaintiff. (*Id.* at ¶¶ 23, 25.) Plaintiff contends that she would not have entered into the consignment agreement but for the promise of prompt repayment, and due to Defendant's excuses and false statements while avoiding full repayment, alleges she was defrauded. (*See id.* at ¶¶ 24, 26.)

Accordingly, Plaintiff commenced the underlying action asserting causes of action for: (i) breach of contract, (ii) accounting, (iii) fraud, and (iv) deceptive trade practices under New York General Business Law ("GBL") § 349. (*Id.* at pp. 2-5.) In her Complaint, Plaintiff seeks a judgment ordering the payment of the $93,500.00 sum owed to Plaintiff plus interest from December 7, 2024, an order directing Defendant to "account for the entire proceeds of the sale of the Painting" and an order "compelling Plaintiff to disgorge the full amount of those proceeds plus interest from December 7, 2024," and compensatory damages resulting from Defendant's alleged fraud, and treble damages for the deceptive trade practices. (*Id.*)

The Court has subject matter jurisdiction based upon diversity since Plaintiff is an individual domiciled in North Carolina, Defendant is an individual domiciled in New York, and the amount in controversy exceeds $75,000, exclusive of costs and interest. (*Id.* at ¶¶ 2-3, 6); 28 U.S.C. § 1332(a).

**PROCEDURAL BACKGROUND**

Plaintiff filed the Complaint on June 27, 2025 (ECF No. 1) and thereafter served the Summons and Complaint on Defendant by July 8, 2025. (ECF No. 6.) Upon receiving no response from Defendant, Plaintiff requested a certificate of default against Defendant on August 21, 2025. (ECF No. 7.) This request was denied on September 5, 2025 for Plaintiff's failure to comply with Local Civil Rule 55.1. Plaintiff re-filed its request with the certificate of service in

3

accordance with Local Civil Rule 55.1 on September 9, 2025 (ECF No. 8) which was granted by the Clerk the same day. (ECF No. 9.) The Court then directed Plaintiff to either file a motion for default judgment in accordance with the undersigned's Individual Practice Rules or voluntarily dismiss the case. (Electronic Order dated September 10, 2025.) Two days later, on September 12, 2025, Plaintiff filed its first motion for default judgment. (ECF No. 10.)

Upon preliminary review of the motion, the Court found the motion deficient for several reasons: first, Plaintiff failed to "file a memorandum of law in support of its motion for default judgment" in accordance with Local Civil Rule 55.2(a)(2); second, Plaintiff failed to "include in its motion a 'proposed order detailing the proposed judgment to be entered'" in compliance with Local Civil Rule 55.2(a)(2); and third, Plaintiff failed to offer support or a sworn or affirmed statement to establish a basis for its claimed attorney's fees of $7,000.00, in compliance with Local Civil Rule 55.2(c). (Electronic Order dated September 15, 2025.) As such, the Court denied Plaintiff's motion without prejudice and with leave to renew on or before October 10, 2025 upon properly submitting the motion in compliance with these requirements. (*Id.*)

On October 10, 2025, Plaintiff filed a motion for an extension of time to file its corrected motion (ECF No. 11) which the undersigned granted the next day and extended the deadline to October 17, 2025. (Electronic Order dated October 11, 2025.) Plaintiff filed its renewed motion for default judgment on October 17, 2025. (ECF No. 12.) On October 22, 2025, Judge Garaufis found that Plaintiff's renewed motion was deficient in two regards: first, "Plaintiff's default judgment papers appear to contain requests for two different amounts"—$93,500 resulting from the alleged underpayment (ECF No. 12) and $287,500 "in damages 'to date' along with 'additional costs and legal fees expected to enforce any judgment therein.'" (ECF No. 12-1); and second, "Plaintiff requests the court to "direct[] Counsel to submit a Bill of Costs" but under

4

Local Rule 55.2(b) the Clerk cannot enter a default judgment when the judgment "seek[s] attorney's fees." Judge Garaufis then directed Plaintiff to "renew [its] default judgment motion [in accordance with] Local Civil Rule 55.2" by properly reconciling the contradictory damage requests, providing a single amount for the court to enter, and a basis for that amount, and "include[ing] a definite calculation of any requested attorney's fees, as well as the factual and legal basis supporting that calculation." (*See* Electronic Order dated October 22, 2025.)

Plaintiff renewed its motion for default judgment on November 17, 2025 (ECF No. 13) which Judge Garaufis referred to the undersigned for a Report and Recommendation two days later. (Electronic Order dated November 19, 2025.) Upon preliminary review, the undersigned found Plaintiff's renewed motion noncompliant in two regards. (*See* Electronic Order dated November 20, 2025.) First, Plaintiff did not comply with the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521 by not filing an affidavit stating whether Defendant is serving in the military, and second, Plaintiff failed to attach a "proposed order detailing the proposed judgment to be entered" in accordance with Local Civil Rule 55.2(a)(2). (*Id.*) The Court directed Plaintiff to properly submit the aforementioned documents on or before December 4, 2025, and to serve on Defendant a copy of the Electronic Order upon Defendant, and file proof of such service on or before November 25, 2025. (*See id.*) After Plaintiff failed to file proof of service by November 25, 2025 deadline, the Court permitted Plaintiff additional time until December 2, 2025 to file such proof of service. (Electronic Order dated November 26, 2025.) Plaintiff thereafter complied. (*See* ECF No. 14 (affidavit of service of November 20, 2025 Order); ECF No. 15 (affidavit of non-military service); ECF No. 16 (proposed order)).

To date, Defendant has not appeared in this action. In its motion for default judgment, Plaintiff requests entry of default against Defendant and seeks a judgment against Defendant

ordering the payment of $93,500.00 and does not seek an award of attorneys' fees, treble damages, or other costs that she initially sought in her initial motion for default judgment. (ECF No. 13-1 at p. 5; ECF No. 13, Goldsmith Decl. at ¶¶ 12-14.)

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.1(b) and 55.2. After the Clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2. The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016). Given that the Clerk has already entered default against Defendant (ECF No. 9), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878 (RJD) (JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sep. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2,; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

6

## DISCUSSION

### I.    Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the defendant, (B) the movant has complied with the SCRA, and (C) that the defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local R. 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the Defendant's residence or business address. E.D.N.Y. Local R. 55.2(a)(1) – (3). Recently added under the Local Rules, is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c). With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).

Here, Plaintiff submitted an exhibit of the SCRA Affidavit of Non-Military Service for Defendant (ECF No. 15 at pp. 4-9) and the affidavit of Aaron M. Goldsmith who conducted a

7

search of the Department of Defense's Servicemembers Civil Relief Act Website which revealed that Defendant is not a member of the military. (ECF No. 15, Goldsmith Aff. at ¶¶ 4-5.) These efforts comply with the SCRA. *See McLaugulin v. Onanafe Management Solutions LLC*, No, 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *6 (E.D.N.Y. Sept. 14, 2024) (noting the SCRA requirement is complied with where plaintiff files a declaration stating that an individual defaulting defendant was not a member of the military after performing a search of the Department of Defense database).

Plaintiff's motion further complies with Local Rule 7.1 and Local Rule 55.2(a) because it includes (1) a notice of motion (ECF No. 13); (2) a memorandum of law (ECF No. 13-1); (3) affidavits and exhibits to support Plaintiff's contentions (*see* ECF Nos. 13-1; 13-2; 13-3; 13-4; 13-5); and (4) a proposed order detailing the proposed judgment. (ECF No. 16.) The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on September 9, 2025 (ECF No. 13-4) and a declaration that Defendant was not a minor or incompetent person. (ECF No. 13-4 at p. 2, Fitzpatrick Aff. at ¶ 5.) Plaintiff also filed an affidavit of service of the requisite documents via first class mail. (ECF No. 13 at p. 6.) Accordingly, the Court finds that Plaintiff's Motion for Default Judgment is procedurally proper and now turns to the merits of the Motion.

## II.    <u>Applying the Default Factors</u>

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317

(ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sep. 3, 2013). Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendant has wholly failed to appear and present any defense, and Plaintiff is left with no further steps to take secure relief. *ADI Glob. Distribution*, 2023 WL 3355049, at *4.

### III. Jurisdiction

#### a. Personal Jurisdiction

When a defendant fails to appear, "before a court grants a motion for default judgment it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "'preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.'" *ADI Glob. Distribution*, 2023 WL 3355049, at *3 (citation omitted). Here, a *sua sponte* assessment of personal jurisdiction is appropriate because Defendant has failed to appear in this action. *Id.*

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60-61 (2d Cir. 2012).

Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Additionally, Rule 4(e)(1) permits service on individuals to be made "pursuant to the law of the

state in which the district court is located." Under New York law, personal service may be

effectuated on an individual:

> [W]here service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" ….

N.Y. C.P.L.R. § 308(4).

Here, Plaintiff served Defendant by affixing a true copy of the Summons to the door of

Defendant's dwelling and by mailing the Summons in an envelope labelled "Personal and

Confidential" by mail to Defendant's last known address—9 Seaponack Drive, Sag Harbor, New

York 11963. (*See* ECF No. 6.) Before doing so, however, Plaintiff attempted to personal serve

Defendant at this residential address on four separate weekdays at differing times of day and was

met with no answer and no information regarding Defendant. (*See id.*) These service attempts

amount to "due diligence" under New York law, thereby permitting service under § 308(4). *See*

*Gross Foundation, Inc. v. Goldner*, 12-CV-1496 (ILG) (RER), 2012 WL 6021441, at \*4

(E.D.N.Y. Dec. 4, 2012) ("New York courts have held that three attempts at personal service on

the defendant at his residence when the defendant could reasonably be expected to be there, on

different days of the week and at different times, constitutes due diligence"); *Weifang Xinli*

*Plastic Products v. JBM Trading Inc.*, No. 11-CV-2710 (WFK) (LB), 2014 WL 4244258, at \*3

(E.D.N.Y. Aug. 26, 2014) (finding that in order to demonstrate "due diligence" before allowing

service under § 308(4), "cases have required approximately three attempts at service, optimally

on non-consecutive days") (collecting New York State cases). Accordingly, service upon

Defendant was proper under New York law.

i.  **General Jurisdiction**

"To analyze whether a court has general jurisdiction over an individual, the 'paradigm forum' is the individual's domicile." *Financial Services Vehicle Trust v. Samaroo*, No. 24-cv-4512 (FB) (JMW), 2025 WL 1446908, at *5 (E.D.N.Y. Apr. 21, 2025) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)), *report and recommendation adopted*, 2025 WL 1446037 (E.D.N.Y. Apr. 21, 2025). Similarly, "[f]or general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014).

Here, though Plaintiff alleges Defendant is an individual "residing" in Sag Harbor, New York (ECF No. 1 at ¶ 3), "residency alone is insufficient to prove a person's domicile." *Samaroo*, 2025 WL 1446908, at *5; *see Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." (internal citations omitted)); *see also Molokotos-Liederman v. Molokotos*, No. 23 Civ. 1654 (VM), 2023 WL 5977655, at *6 (S.D.N.Y. Sept. 14, 2023) ("[A]s courts have remarked, physical residence alone is not sufficient to ascertain a party's domicile for the purposes of establishing ... subject matter jurisdiction.").

Moreover. though service was properly effectuated in accordance with N.Y. C.P.L.R. § 308(4), this does not confer general jurisdiction over a defendant because Defendant was not "personally served" while in New York. *See Owens v. Ronemus*, No. 23 Civ. 3036 (PGG), 2024 WL 3105605, at *4 (S.D.N.Y. June 24, 2024) (emphasizing that a defendant must be served while physically present within New York to confer general jurisdiction over him and noting the extreme absence of case law supporting a finding of general jurisdiction absent a showing of

11

personal service). Additionally, the record is devoid of any indication that Defendant consented to jurisdiction in New York. Accordingly, because the Court does not have general jurisdiction over Defendant, the Court now considers whether there is specific jurisdiction under New York's long-arm statute.

## ii. **Specific Jurisdiction**

Pursuant to New York's long-arm statute, C.P.L.R. 302(a), a court "may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," as long as the Plaintiff's "cause of action aris[es] from" that "transact[ion]." This is known as specific jurisdiction and sometimes referred to as long-arm jurisdiction.  To exercise specific jurisdiction through New York's long-arm statute, "two requirements must be met: (1) The defendant must have transacted business within the state[1]; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). "Section 302(a) also requires that the claims asserted 'aris[e] from any of the acts' that provide the basis for exercising jurisdiction." *Sea Tow Servs. Int'l, Inc. v. Pontin.*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007) (quoting CPLR § 302(a)). "[A] claim 'aris[es] from' a particular transaction when there is

---

[1] "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006). Courts consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward, Inc.*, 362 F.3d 17 at 22 (quotations omitted) (internal citations omitted).

'some articulable nexus between the business transacted and the cause of action sued upon.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103). Here, Defendant is an art dealer engaged in the business of selling and buying works of art from his gallery located in Bridgehampton, New York. (ECF No. 1 at ¶ 4.) From this gallery, Defendant solicited from Plaintiff for the consignment of the Painting forming the basis of this dispute. (*Id.* at ¶¶ 4-5.) Similarly, the transaction underlying this lawsuit—the agreement to sell the Painting—took place in New York as reflected by the Sale Statement (*id.* at p. 8) and Defendant's payment of $80,000.00 to Plaintiff occurred in New York. (*See id.* at ¶¶ 8, 10, 15.)

The exercise of long arm jurisdiction over a defendant by a New York court must also satisfy constitutional due process standards. *Licci*, 673 F.3d at 60. To satisfy the requirements of due process, the defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up). This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness." *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 360. *First,* the Court is satisfied that Plaintiff's claims arise out of Defendant's contacts with New York and support specific jurisdiction because this lawsuit stems from the very transaction Defendant was a part of and derives from Defendant's actions within his New York business practice of selling artworks.

*Second*, the exercise of specific jurisdiction over Defendant is reasonable. The factors supporting this conclusion include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

13

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987)).

The circumstances here demonstrate the reasonableness required for Defendant to anticipate being sued in New York for matters relating to and arising from the sale of Plaintiff's Painting. *See Samaroo*, 2025 WL 1446908, at *6 (quoting *Licci*, 763 F.3d at 170) ("It would be unusual, indeed, if a defendant transacted business in New York and the claim arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have "purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there."). The Court finds the remaining factors to be neutral, and given the Defendant's default, it has not been provided, nor does it find, any reason why exercise of specific jurisdiction over Defendant would be unreasonable. Accordingly, the Court has specific jurisdiction over Defendant.

## IV.    <u>Liability</u>

When a defendant defaults, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84. A defendant's default is considered an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitiongroup, Inc.*, 973 F.2d at 158.

### a.    <u>Statute of Limitations</u>

Before addressing the merits of Plaintiff's claims, the Court must determine if the Plaintiff brought its claims in a timely manner. *See Quintero v. Angels of the World, Inc.*, No. 19-

cv-6126 (DG), 2021 WL 4464123, at *3 (E.D.N.Y Sep. 10, 2021) (analyzing the statute of limitations to ensure the causes of action were not time barred before delving into th merits of each), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sep. 29, 2021).

Under N.Y. C.P.L.R. § 213(2), "[a]n action for breach of contract must be brought within six years of the date of the breach." Additionally, an action for accounting is governed by a six-year statute of limitations and begins to run at the time of each wrongful transaction occurs. *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 269 (S.D.N.Y. 2008) (citing N.Y. C.P.L.R. § 213(1)). Similarly, fraud claims have a six-year statute of limitations from the date the alleged fraud occurred. *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 663 (S.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 213(8). Further, for claims "brought under New York General Business Law § 349, the statute of limitations is three years from the date of accrual, 'which occurs when plaintiff is injured by the deceptive act or practice that violated the statute,' and 'is not dependent upon any date when discovery of the alleged deceptive practice is said to occur.'" *Medical Herald Pub. Co., Inc. v. J.P. Morgan Chase Bank, N.A.*, No. 13 Civ. 6979 (AT), 2014 WL 6769755, at *4 (S.D.N.Y. Nov. 25, 2014) (quoting *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012)) (citations omitted).

Plaintiff commenced this action on June 27, 2025. (*See* ECF No. 1.) As Plaintiff alleges, Defendant made the allegedly fraudulent misrepresentations "[i]n or about 2024" and failed to pay Plaintiff the full sum owed under the Agreement on December 7, 2024. (*Id.* at ¶¶ 5, 15.) Accordingly, Plaintiff's causes of action for breach of contract, accounting, fraud, and deceptive trade practices are all timely.

### b. **Breach of Contract**

As a preliminary matter, this Court notes that New York law applies to Plaintiff's breach of contract claim. The Court has subject matter jurisdiction on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at ¶ 6.) As such, the substantive law to be applied is state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). "A federal court sitting in diversity must apply the choice of law rules of the forum state." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538 (2d Cir. 1997). New York courts consider "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id.* at 1539. Here, New York law applies because of the significant contacts in this case, namely that the injury rising to the current dispute was based on a New York resident's failure to remit payment to Plaintiff in New York and Plaintiff relies exclusively on New York law in its submissions. *Romco Structural Sys. Corp. v. Axis Ins. Co.*, 596 F. Supp. 3d 464, 470-71 (E.D.N.Y. 2022).

To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff; (3) defendant's breach; and (4) damages resulting from the breach. *Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (App. Div. 2d Dep't 2013); *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).

### i. *Existence of a Valid and Enforceable Contract*

Plaintiff alleges that the parties entered into a consignment agreement via text message pursuant to which Defendant was to market and sell the Painting for an agreed price of $195,000. (ECF No. 1 at ¶ 8; *see* ECF No. 13-5 (text message communications between Plaintiff and Defendant); *see also* ECF No. 13-4, Fitzpatrick Decl. at ¶ 12). The Sale Statement dated

16

December 7, 2024 reflects the terms of this Agreement, includes the final sale price by Defendant of $173,500, and is signed by Defendant. (ECF No. 1 at pp. 8-9.)

To create a binding contract under New York law, there must be an offer, acceptance, and consideration. *Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551, 556 (S.D.N.Y. 2004). Specifically, "there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all *material terms*." *Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498, 504 (S.D.N.Y. 2023) (emphasis added) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999)). "Consideration to support an agreement exists where there is either a benefit to the promisor or a detriment to the promise." *Id.* (quoting *Guzman v. Ramos*, 139 N.Y.S.3d 648, 651 (App. Div. 2d Dep't 2021)).

"Under a consignment agreement, one party contracts to transfer possession goods to another for the purpose of resale . . . and in a consignment agreement, the 'title remains in the party supplying the goods (the consignor) until the transferee (the consignee) exercises an option to take title to the goods once certain conditions are met.'" *Usov v. Marc Lazar, Inc.*, 263 F. Supp. 3d 436, 445 (S.D.N.Y. 2017) (quoting *United States v. Nektalov*, 440 F. Supp. 2d 287, 298 (S.D.N.Y. 2006)). "Title and the right to immediate possession of the goods remains with the consignor until the option is exercised. Once the option is exercised, title passes to the consignee." *Nektalov*, 440 F. Supp. 2d at 298. Given this contractual relationship, a "consignment agreement . . . is not a 'sale of goods'" governed by the U.C.C. but rather is an "agency with a bailment." *Usov*, 263 F. Supp. 3d at 445; *Nektalov*, 440 F. Supp. 2d at 298.

Here, the Sale Statement and corresponding text messages between the parties suggest that the parties entered into a binding agreement for the sale of the Painting. The Sale Statement

17

lists essential terms to the agreement such as quantity, price of the sale of the Painting ($173,500.00), description of the Painting, the date of sale, and contains the addresses of the parties. (*See* ECF No. 1 at pp. 8-9.)

Moreover, as noted in the text messages dated December 4, 2024, Plaintiff asked Defendant whether he was "any closer to a sale" to which Defendant responded "yes, we settled at [$175,000] over the weekend" thereby indicating a meeting of the minds with respect to the parties' respective contractual obligations—Plaintiff delivering the Painting to Defendant and Defendant negotiating and selling the Painting for Plaintiff. (*See* ECF No. 13-5 at pp. 1-2.) Further, on February 28, 2025, the parties discussed the final sale price of the Painting, the price Defendant negotiated the Painting for, and how much commission Defendant would take in accordance with their agreement. (*See id.* at pp. 16-21.) Indeed, leading up to the sale, Plaintiff texted Defendant to confirm that he would be selling the Painting to which Defendant responded that he would. (*See id.* at p. 5 (Defendant responding "yes it will be done" when asked if the Painting will be sold in the "next two weeks")).  The Sale Statement and text messages between the parties before and after the sale of the Painting are sufficient to show that the parties entered into a valid consignment agreement. *Usov*, 263 F. Supp. 3d at 445-46 (concluding a valid consignment agreement existed considering defendant's "conduct in partial performance of the Agreement" was an "unmistakable signal" of the agreement and demonstrated that defendant "understood a contract to be in effect" and "agree[d] to its terms").

ii. *Performance by Plaintiff, Breach by Defendant, and Damages*

Plaintiff performed under the Agreement by tendering the Painting to the Defendant for its sale at Defendant's art gallery. (*See* ECF No. 1 at ¶ 1; *see* ECF No. 13-4, Fitzpatrick Decl. at ¶ 12.) Moreover, and as Plaintiff argues, Defendant breached by failing to tender the total amount

18

Defendant sold the Painting for ($173,500.00) to Plaintiff in accordance with their Agreement. (ECF No. 1 at ¶ 9; ECF No. 13-4, Fitzpatrick Decl. at ¶ 12.) Instead, Defendant has only paid Plaintiff $80,000.00 to date and has failed to remit any additional payment since. (ECF No. 1 at ¶ 10; ECF No. 1 at pp. 8-9; ECF No. 13-5 at p. 1.) Consequently, Plaintiff incurred economic loss from this breach, namely for the remaining $93,500.00 due by Defendant to Plaintiff under the Agreement. (ECF No. 1 at ¶¶ 15-16; ECF No. 13-4, Fitzpatrick Decl. at ¶ 12.)

Taking these well-pleaded allegations as true, Plaintiff has established Defendant's liability for a breach of the consignment agreement. *See Lucy v. Lubov Fine Art LLC*, No. 24 Civ. 8592 (JHR) (GWG), 2025 WL 3637425, at *3 (S.D.N.Y. Dec. 16, 2025) (concluding plaintiff established a breach of contract claim where she alleged that she entered into a consignment agreement with defendants, she performed under the assignment by consigning her painting to defendants for sale, and "evidently did so, inasmuch as [defendants] sold the painting" but defendants "did not perform under the consignment agreement" by only remitting some of the full payment due under the agreement). Accordingly, the undersigned recommends finding that Defendant is liable to Plaintiff for breach of contract.

### c. Accounting

Plaintiff maintains that while Defendant admitted to selling the Painting for $173,500.00, Defendant has not provided any proof that the Painting sold for that amount and, absent such proof, "the possibility exists that Defendant sold the . . . Painting for a sum in excess of $173,500.00." (ECF No. 1 at ¶ 19.) As such, Plaintiff claims to be entitled to "an accounting demonstrating exactly [the amount] Defendant received for [the] Painting" and an order directing "Defendant to disgorge any sums he received above the $80,000.00 partial payment that he has made to Plaintiff." (*Id.* at ¶ 20.)

The elements for a claim for an accounting, which is an equitable remedy, are: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) that there is no adequate legal remedy; and in some cases, a demand for an accounting and a refusal." *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 102 (E.D.N.Y. 2025) (quoting *In re Science, Language, and Arts International School*, No. 22-40065-ess, 2024 WL 2036101, at *24 (E.D.N.Y. May 7, 2024). In seeking an accounting under New York law, a plaintiff must "specifically allege: (a) that a fiduciary relationship existed between the parties, and (b) that the defendant breached his or her fiduciary duty." *Id.* (citing *Soley v. Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011). "Proof of a fiduciary relationship is a mandatory element of an accounting claim under New York law." *Faulkner v. Arista Recs. LLC*, 602 F. Supp. 2d 470, 484 (S.D.N.Y. 2009) (citing *Rogers v. Roulette Recs., Inc.*, 677 F. Supp. 731, 738-39 (S.D.N.Y. 1988)).

Here, Plaintiff fails to allege, nor can the Court ascertain, anything that would give rise to a "fiduciary duty independent of the contractual agreement that bound the parties." *See Generation Next Fashions Ltd. v. JP Morgan Chase Bank N.A.*, 698 F. Supp. 3d 663, 678 (S.D.N.Y. 2023). Absent such an allegation or proof of such fiduciary relationship, the undersigned recommends dismissing Plaintiff's claim for accounting. *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (dismissing the claim for accounting where the relationship between the parties was "merely contractual, not fiduciary in nature"); *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 189 (S.D.N.Y. 2018) (collecting cases dismissing claims for accounting in the absence of any allegation ass to the existence of a confidential or fiduciary relationship between the parties).

### d. **Fraud**

Plaintiff asserts that "Defendant has defrauded the Plaintiff . . . ." (ECF No. 1 at ¶ 27.) To bolster this statement, Plaintiff maintains that Defendant represented to Plaintiff that upon sale of the Painting, Defendant would "promptly remit payment of the proceeds to Plaintiff." (*Id.* at ¶ 23.) Indeed, Plaintiff argues that the "prompt payment of the sale proceeds was a critical element of the consignment agreement, and without such representation, Plaintiff would not have arranged for the delivery of the [] Painting to Defendant." (*Id.* at ¶ 24.) According to Plaintiff, at the time the Agreement was solicited and made, Defendant "was aware that because of his own precarious financial situation, he would not be able to remit the full amount of proceeds to Plaintiff, and he intended to use a portion of the sale proceeds to satisfy his own obligations." (*Id.* at ¶ 25.) Following the sale of the Painting, Plaintiff avers Defendant "made numerous excuses and false statements to avoid making the payment of the full proceeds." (*Id.* at ¶ 26.)

"It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Aviation Hagglers International DWC-LLC v. UTD. Aviation Solutions LLC*, No. 24-cv-06610-RPK-JMW, 2025 WL 3451979, at *11 (E.D.N.Y. Nov. 12, 2025) (quoting *Sekisui Am. Corp. v. Hart*, No. 12-cv 3479 (SAS), 2012 WL 5039682, at *3 (S.D.N.Y. Oct. 17, 2012)). A plaintiff must distinguish the fraud claim from a breach of contract claim by "(1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages." *Id.* (citation omitted); *see also Poplar Lane Farm LLC v. The Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that

21

dispute are contractual; attempts to repackage them as sounding in fraud ... are generally precluded, unless based on a duty independent of the contract"); *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (dismissing plaintiff's fraud claim when "fraud allegations are nothing more than a restatement of its breach of contract claim").

Here, Plaintiff's allegations center around Defendant's fraudulent misrepresentations connected to Defendant's *performance* under Agreement, specifically Defendant's failure to "promptly repay" the sale proceeds to Plaintiff as agreed upon which, as this Court has held before, warrants dismissal of the fraud claim as duplicative of the breach of contract. *See 6340 NB LLC v. Capital One, N.A.*, No. 20-cv-02500 (OEM) (JMW), 2024 WL 3694262, at *12 (E.D.N.Y. Mar. 11, 2024), *report and recommendation adopted*, 2024 WL 4100184 (E.D.N.Y. Sep. 5, 2024). Plaintiff fails to identify a duty that Defendant owed to Plaintiff *independent of* the Agreement that would form the basis of the fraudulent conduct she cites to. Accordingly, should the District Judge find the existence of a valid contract claim, the Court recommends dismissing Plaintiff's fraud claim as duplicative.

Should the District Judge disagree and find that no valid breach of contract claim exists, Plaintiff's fraud claim would still fail. Common law fraud in New York requires a plaintiff to allege "(1) a misrepresentation or a material omission of a material fact which was false and known by [the] defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who suffered an injury as a result of such reliance. *DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*, No. 24-1217, 2025 WL 863338, at *2 (2d Cir. Mar. 19, 2025) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008)).

22

Allegations of fraud must comply with Rule 9(b)'s heightened pleading requirements. *See VR Glob. Partners, L.P. v. Petroleos de Venezuela, S.A.*, No. 24-1176-CV, 2024 WL 4891271, at *3 (2d Cir. Nov. 26, 2024) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170-71 (2d Cir. 2015)). To comply with Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DM Manager*, 2025 WL 863338, at *2 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). Additionally, the Second Circuit requires a plaintiff to "plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). A "strong inference" of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Lerner*, 459 F.3d at 290-91).

Here, Plaintiff offers nothing more than threadbare conclusory statements as to each element of fraud which is wholly insufficient to satisfy Rule 9(b)'s requirements. *See Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006) (noting "conclusory allegations of fraud will be dismissed under Rule 9(b)"). For example, Plaintiff contends not only that Defendant made excuses as to why he could not pay, but that Defendant knew prior to the transaction that he would not be able to pay Plaintiff the full sum. (ECF No. 1 at ¶¶ 24-26.) Nothing more is offered to support *how* Defendant knew the statements were made falsely, *why* the statements by Defendant were made fraudulently or with an intent to deceive, or even *what* gave Plaintiff the impression that Defendant made misrepresentations to resolve his own

23

financial issues. Without more, the undersigned recommends dismissing Plaintiff's fraud claim. *See Zou v. Han*, 797 F. Supp. 3d 199, 220 (E.D.N.Y. 2025) (adopting the Report and Recommendation recommending plaintiffs fraud claim be dismissed where they failed to "establish that [defendant] knew he was acting improperly, that he acted with a fraudulent intent, or how these actions actually induced Plaintiffs to rely on the misrepresentations to their detriment").

### e.  Deceptive Trade Practices Under N.Y. GBL § 349

Plaintiff alleges that Defendant's solicitation of the consignment made by representing that he would promptly remit the sale proceeds, Defendant's failure to timely remit the proceeds, and Defendant's false statements made therewith all constitute "deceptive trade practices" under GBL § 349. (ECF No. 1 at ¶ 29.) Plaintiff also maintains that Defendant's "under-reporting of the sale proceeds" also constitutes deceptive trade practices. (*Id.* at ¶ 30.)

New York GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 498 (S.D.N.Y. 2011) (citing N.Y. Gen. Bus. Law § 349(a)). To state a claim under this statute, a plaintiff "must allege that '(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Id.* (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

"As a threshold matter, a party must plead "consumer-oriented" conduct to claim the benefit of Section 349." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 647 N.E.2d 741 (N.Y. 1995)). "The consumer-oriented requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers."

24

*Wilson v. Northwestern Mutual Ins. Co.,* 625 F.3d 54, 64 (2d Cir. 2010). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* As such, "New York courts have recognized that 'private contract disputes' between the parties do not 'fall within the ambit of the statute.'" *WorldHomeCenter.com*, 851 F. Supp. 2d at 498 (citing *Oswego Laborers Local 214 Pension Fund*, 647 N.E.2d at 744); *Genesco Entertainment, a Div. of Lymutt Industries, Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (finding "single shot" transactions involving complex, particular arrangements to be those falling "clearly . . . outside the purview of section 349").

Here, outside of Plaintiff's two allegations that Defendant's actions amounted to "deceptive trade practices," Plaintiff neglects to address how Defendant's conduct affected others "similarly situated." *Rabadi v. City of Yonkers*, No. 21 CV 1258 (VB), 2022 WL 889734, at *10 (S.D.N.Y. Mar. 25, 2022) (collecting cases dismissing GBL § 349 claims where plaintiffs failed to allege how the single cited incident affected a wide range of customers). Plaintiff's allegations as to deceptive trade practices, in fact, relate solely to the private contractual dispute between the parties to the Agreement, thus failing to prove the "consumer oriented" prong under GBL § 349. *See Alexanian v. Government Employees Ins. Co.*, No. 21-CV-05427 (LDH) (TAM), 2022 WL 4648454, at *5 (E.D.N.Y. Oct. 1, 2022) (dismissing the GBL § 349 claim because plaintiff's allegations "establish[ed] nothing more than a private dispute between parties" and failed to "suggest Defendants' conduct was directed at anybody other than [Plaintiff]"). Accordingly, the Court recommends dismissal of Plaintiff's claim for deceptive trade practices under New York GBL § 349.

## V.      Damages

Once liability for default is established, the next inquiry. A party's default constitutes a concession of all well-pleaded allegations, however such default "is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

In Plaintiff's Complaint, she requested damages in the form of money owed under the Agreement, treble damages, attorney's fees, and disgorgement of the full price plus interest. (ECF No. 1 at p. 6.) However, Plaintiff has since retracted this requested relief in her renewed motion for default judgment:

> Upon further review and research, Your Declarant believes that treble damages under NYS General Obligations Law §349 is not applicable nor appropriate under the instant circumstances. Counsel has discussed same with Plaintiff, who agreed to seek default without a request of treble damages.
>
> Further, Your Declarant reviewed the amount of work performed herein, which is far less than contemplated. Additionally, Plaintiff is most concerned with proceeding in the most expeditious manner possible against a Defendant whom she believes is attempting to evade the case, rather than litigate properly. As a result, Plaintiff is not seeking legal fees as an additional relief herein.

(ECF No. 13, Goldsmith Decl. at ¶¶ 12-13.)

Consequently, Plaintiff is only "seek[ing] the amount due and owing under her agreement with Defendant." (*Id.* at ¶ 13.)

### a.  The Remittance of $93,500.00

"Under New York law, it is a 'fundamental principle' that an award of damages for breach of contract 'should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract.'" *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 736 (S.D.N.Y. 2018) (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002))

26

(citation omitted). Indeed, "[i]t has long been established in New York that a breaching party is liable for all direct and proximate damages which result from the breach." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (citing *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)). "[T]hose damages that are the natural and probable consequence of the breach" are considered "general damages." *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 346 (S.D.N.Y. 2021) (quoting *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014)); *Powers v. Stanley Black & Decker, Inc.*, 137 F. Supp. 3d 358, 386 (S.D.N.Y. 2015) (internal marks omitted) (citations omitted).

"The Second Circuit explains that '[a] plaintiff is seeking general damages when he tries to recover the value of the very performance promised . . . .'" *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 618 F. Supp. 2d 280, 292 (S.D.N.Y. 2009) (quoting *Schonfeld v. Hilliard*, 218 F.3d 164, 175-176 (2d Cir. 2000)) (alteration in original). It follows, therefore, that general damages are measured "by what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract." *Bell Semiconductor, LLC v. Broadcom Corp.*, No. 24-cv-156 (ER), 2024 WL 5118494, at *8 (S.D.N.Y. Dec. 16, 2024) (quoting *Latham Land I LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 151-52 (App. Div. 3d Dep't 2012)). "To prove general damages under New York law, the plaintiff must show (1) the fact or existence of damages to a 'reasonable certainty' and, if the fact or existence of damages is proven, (2) 'a "stable foundation for a reasonable estimate" [of damages] incurred as a result of the breach.'" *Holland Loader Co. v. FLSmidth A/S*, 769 F. App'x 40, 42 (2d Cir. 2019) (quoting *Tractebel Energy Mktg., Inc.*, 487 F.3d at 109).

Plaintiff seeks remittance from Defendant for $93,500.00—the difference between the price agreed upon for the sale of Painting under the Agreement and reflected in the Sale Statement ($173,500.00) and the amount the Defendant has paid to Plaintiff thus far ($80,000.00). (*See* ECF No. 1 ¶¶ 13-16; *see also* ECF No. 13, Goldsmith Decl. at ¶¶ 10.)  To date, Defendant has yet to remit the remainder of the sale price proceeds which the parties agreed to. (ECF No. 1 at ¶¶ 13.) Accordingly, Plaintiff is entitled to a remittance of the remainder of the Painting's sale price, $93,500.00, to ensure that Plaintiff is put in the same economic position she would have been had Defendant fully performed on the terms of the Agreement.

**b.  <u>Pre-Judgment and Post-Judgment Interest</u>**

Though Plaintiff does not include a demand for pre-judgment interest, under New York law a "plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *K2M Design, Inc. v. Schmidt*, No. 22 Civ. 3069 (MKV) (GS), 2023 WL 10674525, at *9 (S.D.N.Y. Nov. 30, 2023), *report and recommendation adopted*, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024) (quoting *U.S. Naval Inst. v. Charter Comm'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)). In fact, the very language of N.Y. C.P.L.R. § 5001(a) states that prejudgment interest "*shall be recovered* upon a sum awarded because of a breach of performance of a contract." (emphasis added). "Section 5001 imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000); *see also Katzman v. Helen of Troy Tex. Corp.*, No. 12 Civ. 4220 (PAE), 2013 WL 1496952, at *2 (S.D.N.Y. Apr. 11, 2013) ("A long line of case law has held that prejudgment interest is mandatory" in breach of contract cases under New York law).

Indeed, "courts have awarded prejudgment interest in breach of contract cases even where plaintiff did not seek such relief in its complaint or at any point up through trial." *Schmidt*, 2023 WL 10674525, at *9 (awarding prejudgment interest on a motion for default judgment finding defendant in breach of the contract despite no demand for prejudgment interest being made); *Eastern Regional Medical Center, Inc. v. Battey*, No. 13 CV 7594 (VB), 2015 WL 1909851, at *4 (S.D.N.Y. Apr. 27, 2015) (adopting Report and Recommendation granting plaintiff's motion for default judgment on the breach of contract claim and awarding prejudgment interest "[a]lthough plaintiffs [did] not explicitly request prejudgment interest" in their papers). Accordingly, the Court finds that an award of prejudgment interest is required even though Plaintiff's motion papers did not specifically seek such an award.

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract," NY CPLR § 5001(a) (McKinney), "up until and including the date of judgment, at nine percent per annum." *Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*, 314 F. Supp. 3d 534, 552 (S.D.N.Y. 2018), *aff'd sub nom.*, *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90 (2d Cir. 2019) (citing N.Y. C.P.L.R. § 5004); *HTV Industries, Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018). In New York, a claim for breach of contract accrues upon breach. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Therefore, "[t]he court should calculate pre-judgment interest 'from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made.'" *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 555 (E.D.N.Y. 2025) (adopting report and recommendation) (quoting N.Y. C.P.L.R. §§ 5001(b)–(c), 5004).

According to the Complaint, Defendant sold the Painting on December 7, 2024 for

$173,500.00 and has failed to remit the entire sum of the sale to Plaintiff. (ECF No. 1 at ¶ 13.) December 8, 2024—the day after Defendant was to remit payment under the Agreement—therefore serves as the earliest ascertainable date of breach giving rise to Plaintiff's cause of action for breach of contract. As such, December 8, 2024, is "a reasonable date to begin calculating pre-judgment interest for Plaintiff's breach of contract claim . . . ." *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 555 (E.D.N.Y. 2025) (adopting report and recommendation) (finding the appropriate date to begin calculating pre-judgment interest was March 21, 2019 because allegations in the complaint indicated defendant "failed, and continue[d] to fail, to pay" plaintiff from March 21, 2019 to present). Accordingly, Plaintiff should be awarded pre-judgment interest on the $93,500.00 calculated at 9% per annum from December 8, 2024 to date Judgment is entered.

Although Plaintiff does not request post-judgment interest, the award of post-judgment interest is mandatory pursuant to 28 U.S.C. § 1961(a), which applies to "any money judgment in a civil case recovered in a district court." "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Having found Plaintiff established liability for breach of contract and would be entitled to damages in the form of $93,500.00, and pre-judgment interest at 9% per annum on that amount, the undersigned respectfully recommends a finding that Plaintiff be entitled to post-judgment interest from the date the Clerk of Court enters judgment until the date of payment at the statutory rate set forth in 28 U.S.C. § 1961.

## CONCLUSION

Accordingly, for the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment (ECF No. 13) be **GRANTED** and the Court enter judgment against Defendant Mark Borghi in the total amount of $93,500.00, plus pre-judgment interest at 9% per annum on the $93,500.00 from December 8, 2024 to date of entry of Judgment, and post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961 from the date the Clerk of Court enters judgment until the date of payment.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon Defendant on or before March 9, 2026, and file proof of service of the same ECF. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations) . Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's

decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
      March 5, 2026

**RESPECTFULLY RECOMMENDED**,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge